Matter of Ellysha JJ. (Jorge JJ.) (2019 NY Slip Op 04512)





Matter of Ellysha JJ. (Jorge JJ.)


2019 NY Slip Op 04512


Decided on June 6, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 6, 2019

525983

[*1]In the Matter of ELLYSHA JJ., Alleged to be a Neglected Child. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JORGE JJ., Appellant.

Calendar Date: April 24, 2019

Before: Lynch, J.P., Mulvey, Devine, Aarons and Rumsey, JJ.


Lisa K. Miller, McGraw, for appellant.
Thomas P. Coulson, Broome County Department of Social Services, Binghamton, for respondent.
Allen E. Stone, Vestal, attorney for the child.



MEMORANDUM AND ORDER
Aarons, J.
Appeal from an order of the Family Court of Broome County (Young, J.), entered February 22, 2017, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent and Erica II. (hereinafter the mother) are the parents of a daughter (born in 2010). Petitioner commenced this neglect proceeding against respondent alleging, among other things, that respondent's unsubstantiated claims of sexual abuse while the child was in the mother's care was having a detrimental impact on the child, that his physical examinations of the child's vaginal area were unjustified and harmful to the child and that he coached the child to say certain things about the mother when the child was interviewed by investigators or caseworkers. Following a fact—finding hearing, Family Court adjudicated the child to be neglected. Respondent appeals. We affirm.
Petitioner, as the party seeking to establish neglect, was required to prove by a preponderance of the evidence that the child's physical, mental or emotional condition was impaired or was imminently in danger of becoming impaired and that the actual or threatened harm to the child was a consequence of respondent's failure to exercise a minimum degree of care in providing the child with proper supervision or guardianship (see Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]; Matter of Kieran XX. [Kayla ZZ.], 154 AD3d 1094, 1095 [2017]; Matter of William KK. [Samantha LL.], 146 AD3d 1052, 1052 [2017]). "The parental behavior asserted as a basis for neglect is measured against the behavior of a reasonable and prudent parent faced with the same circumstances" (Matter of Boryana D. [Victoria D.], 157 AD3d 1011, 1012 [2018]; see Matter of Camden J. [William J.], 167 AD3d 1346, 1349 [2018]). Where supported [*2]by a sound and substantial basis in the record, considerable deference is given to Family Court's factual findings and credibility determinations (see Matter of Jade F. [Ashley H.], 149 AD3d 1180, 1182 [2017]; Matter of William KK. [Samantha LL.], 146 AD3d at 1053).
The record discloses that petitioner investigated respondent's claim that the mother physically abused the child by bruising the child's legs. At the fact-finding hearing, however, the mother testified that the only form of discipline that she imposed was giving the child a time-out and that no one in her household used physical discipline. A caseworker with Child Protective Services (hereinafter CPS) in Broome County investigated the bruising allegations and testified that, when she interviewed the child, the child said that she had lied about the mother as having caused the bruises and that respondent told her to place the blame on the mother. The caseworker also testified that there was no credible evidence that the mother caused the bruising on the child's legs. Another caseworker likewise testified that, upon interviewing the child, the child mentioned that she was told by respondent to say that the mother caused the bruises and to say that she was afraid to stay at the mother's house. This caseworker also stated that the child's bruises appeared to be "typical childhood bruises" and not the result of being slapped by an open hand.
Respondent also made multiple claims that the child was sexually abused by the mother's boyfriend or family members. A physician assistant, however, testified that she examined the child multiple times and did not observe anything that indicated that the child was sexually abused. Law enforcement officials who interviewed the child and investigated respondent's sexual abuse allegations testified that they believed that the child was being coached to say certain things about the mother and the mother's family members and that they found no evidence of sexual abuse. A supervisor with CPS testified that when she was a caseworker investigating respondent's allegations, the child, during an interview, initially indicated that she was inappropriately touched by the mother's family members but then said it was not true. The supervisor believed that the child was being coached or led to believe that the mother was a bad person.
A sexual assault forensics examiner testified that, upon an examination of the child, she noted a small tear in the vaginal area and concluded that such injury was suspicious for sexual abuse. The forensics examiner also stated that parts of her examination could "sometimes be intimidating to a child." The mother testified that due to respondent's sexual abuse allegations, the child was subjected to multiple interviews and examinations. An investigator with the State Police stated that, when investigating child abuse and neglect matters, the best practice is to minimize the number of interviews with the child, whether by law enforcement agencies or quasi-investigatory agencies. Furthermore, as a consequence of respondent's allegations, a temporary order of protection was entered against the mother's family members, which was difficult on the child.
A senior caseworker with CPS testified that the child reported that respondent would regularly check her vagina looking for dirt. The senior caseworker found this concerning and stated that, based on the child's age, respondent should not be doing this. The senior caseworker told respondent that it was not appropriate for him to regularly check the child's vagina, but respondent continued to do so because he believed he was protecting the child and looking for evidence of sexual abuse.
Family Court found that respondent was "fixated on harassing the . . . mother and was not protecting the welfare of [the] child," that he coached the child into making claims against the mother and that he subjected the child to unnecessary investigations and medical procedures to further his position in custody matters. In our view, the court's findings are supported by a sound and substantial basis in the record. Accordingly, the court's adjudication of neglect will not be disturbed (see Matter of Diane C. v Richard B., 119 AD3d 1091, 1095 [2014]; Matter of Salvatore M. [Nicole M.], 104 AD3d 769, 769 [2013], lv denied 21 NY3d 858 [2013]; Matter of Julian K., 23 AD3d 717, 718-719 [2005]).
Lynch, J.P., Mulvey, Devine and Rumsey, JJ., concur.
ORDERED that the order is affirmed, without costs.